FRANK GALLAGHER & others *vs.* BOARD OF APPEALS OF FALMOUTH & others.

Barnstable.   October 7, 1966. — December 1, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Motel; Hotel; Special permit; Jurisdiction; Notice of hearing; Board of appeals: appeal to board; Appeal to Superior Court.   *Motel. Notice.   Words,* "Motel," "Hotel."

A provision of the zoning by-law of a town, that "No permit for an apartment house, billboard, boarding or lodging house, hotel, apartment hotel . . . shall be granted by the Building Inspector except with the written approval of the Selectmen," gave the selectmen a zoning power re-

specting special permits authorized and regulated by G. L. c. 40A, § 4, after its enactment by St. 1954, c. 368, § 2, and an appeal from action by them under such provision lay to the Superior Court under c. 40A, § 21, and not to the board of appeals. [413]

Where the selectmen of a town were authorized by its zoning by-law and by G. L. c. 40A, § 4, to grant a special permit and caused a notice of a public hearing on the application to be published by newspaper in a manner conforming to the zoning by-law but not to c. 40A, § 17, they had no jurisdiction to act on the application. [412, 414]

The word "Hotel" in the zoning by-law of a town permitting "Boarding and lodging houses, hotels, apartment hotels and tea rooms" in single residence districts and defining a "hotel or lodging house" as "a building . . . used for paying guests, permanently or transiently, where over five (5) bedrooms are used for such purposes," meant the conventional hotel with restaurant accommodation and did not include a motel. [415, 417, 419]

BILL IN EQUITY filed in the Superior Court on March 3, 1964.

The suit was heard by *Beaudreau, J.*

*Walter H. McLaughlin, Jr.,* for the plaintiffs.

*John H. Fletcher Calver* for the defendant Kinchla's Inc. (*Robert Clayton,* for the defendant Board of Appeals of Falmouth & others, with him).

WHITTEMORE, J. Four property owners in Falmouth appealed to the Superior Court under G. L. c. 40A, § 21, from the decision of the board of appeals sustaining the grant of a permit to Kinchla's Inc. (Kinchla's) to build a motel, and also from the action of the selectmen under § 21 of the zoning by-law[1] in giving advance approval of the grant. The judge, in his report of material facts, noted that defects in the notice of the selectmen's hearing were indicative of lack

---

[1] The zoning by-law provides: "Section 21. Permits by Selectmen Required. No permit for an apartment house, billboard, boarding or lodging house, hotel, apartment hotel . . . shall be granted by the Building Inspector except with the written approval of the Selectmen as provided in this section. Any person desiring to obtain the permission of the Selectmen, for any purpose for which permission is required under this by-law, shall make written application therefor and the Selectmen shall hold a public hearing thereon after such notice as they may direct and render a decision. They may make rules for such hearings, and shall notify all holders of real estate who might be affected and shall at such hearings hear such owners and others who may desire to be heard. No approval shall be granted by the Selectmen without considering the effects upon the neighborhood and the Town. If a permit may be issued with conditions, such as will protect the community, such conditions may be from time to time changed in the interest of the community. If a permit would result in substantial injury it shall be refused."

of jurisdiction, but he decided the case on the substantive issue that the zoning by-law did not permit motels. The final decree annulled the decisions of the selectmen and the board of appeals and ruled the permit void. The appeal to this court is by Kinchla's. The board of appeals, the board of selectmen, and the building inspector have, however, filed a brief on both issues.

1. The selectmen gave one notice by publication in a local newspaper on November 8, 1963, of a hearing to be held eleven days later, that is, on November 19, 1963. This notice conformed to the zoning by-law but not to G. L. c. 40A, §§ 4 and 17.

General Laws c. 40A, § 4, requires, for hearings on applications for special permits to be granted pursuant thereto, the notice called for by c. 40A, § 17. Section 17, in the case of newspaper notice, specifies two publications, the first to be not less than fourteen days before the date of the hearing.

The issue therefore is whether the by-law in giving the selectmen the power and duty to pass on permits was exercising a zoning power regulated by c. 40A, § 4.[2] For reasons to be stated, we hold that it was.

We note that, according to the evidence, § 21 of the by-law was adopted at a time when there was no statutory basis for the exercise by the selectmen (not acting as a board of appeals pending the appointment of such a board) of discretionary power over exceptions and permits. A note in the printed copy of the zoning by-law in evidence states that the

---

[2] General Laws c. 40A, § 4, provides: ''A zoning ordinance or by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such ordinance or by-law. Such exceptions shall be in harmony with the general purpose and intent of the ordinance or by-law and may be subject to general or specific rules therein contained. The board of appeals established under section fourteen of such city or town, or the city council of such city or the selectmen of such town, as such ordinance or by-law may provide, may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an exception. Before granting such a special permit the board of appeals, or the city council or the selectmen if the ordinance or by-law so provides, shall hold a public hearing thereon, notice of which shall be given in accordance with section seventeen.''

original by-law adopted in 1926 was largely rewritten by a 1948 amendment approved February 23, 1951. For all that appears, § 21 may have had a forerunner in the 1926 by-law. Prior to St. 1954, c. 368, § 2, inserting c. 40A, the provision for exceptions and permits was found in G. L. c. 40, § 30, inserted by St. 1933, c. 269, § 1. In the part now relevant, § 30 was unamended until its repeal by St. 1954, c. 368, § 1, and gave power in respect of exceptions and permits only to the board of appeals.[3] We need have no present concern with the validity of § 21 of the by-law or any forerunner provision under the various statutory provisions for zoning from 1926 to 1954. We hold that from and after the enactment of St. 1954, c. 368, § 2, there was full statutory basis for § 21 of the by-law. It is to be noted, however, that, as the by-law designates the selectmen, the appeal to the Superior Court under c. 40A, §§ 4 and 21 is from their action, and there is no appeal to or basis for action by the board of appeals.

That § 21 of the by-law provides for the exercise of a zoning power and that c. 40A, § 4, requires that it be exercised in the manner set forth in § 4 is shown by our decisions in two cases. The amended ordinance sustained in *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, was similar to the Falmouth by-law except that there, in accordance with G. L. c. 40, § 30, the board of appeals was given the power to grant the permit for a motel in a single residence district. The distinction is of no importance on the issue before us. In the *Burnham* case we said (p. 117), "The authority given to the board by the amendment to grant permits for motels was within the powers which could be conferred on boards of appeals under § 30. The board . . . was granting a special permit and § 30 specifically provides for such permits."

In *Coolidge* v. *Planning Bd. of No. Andover,* 337 Mass.

[3] General Laws c. 40, § 30, provided in part that zoning "ordinances or by-laws may provide that the board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance or by-laws in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained." The board of appeals is empowered to "hear and decide requests for special permits upon which such board is required to pass under such ordinance or by-law."

648, 649, 650–651, we held invalid a by-law that in effect purported to give to the planning board the power to grant special permits for motels and in so doing "to exercise its judgment as to whether a motel may be built or operated on a particular lot." We noted that the by-law in the aspect under review was like that in the *Burnham* case which we had dealt with as providing for a statutory exception. Compare *Richardson* v. *Zoning Bd. of Appeals of Framingham, ante,* 375, 379–380. In the *Coolidge* case we said, "The power purported to be given to the planning board . . . was in substance encompassed within the power to grant exceptions under c. 40A, § 4, so that if it had been granted to the board of appeals or the selectmen it would have been a valid delegation. It is insignificant that the provision for motels is not specified in terms as an exception."

The brief of the town officials lays stress on the presence in the by-law of express provisions for the granting of exceptions by the board of appeals. Whatever the origin of the arrangement and the terminology of the by-law provisions, they cannot control the substantive construction of § 21 of the by-law. Indeed the brief asserts that § 21 "unites and requires the judgment and discretionary powers of the Board of Selectmen and the Building Inspector . . . before permits involving substantial matters can be granted by the Town officials." *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, and *Pratt* v. *Building Inspector of Gloucester,* 330 Mass. 344, 345, relied on by the town officials, are not in point. See the *Coolidge* case, 337 Mass. 648, 651.

2. Because of the lack of required notice, the action by the selectmen was invalid and without effect. *Kane* v. *Board of Appeals of Medford,* 273 Mass. 97, 104. See *Rousseau* v. *Building Inspector of Framingham,* 349 Mass. 31, 36–37. A defect in the general notice to the public cannot be overcome by the appearance of some citizens and the absence of objection to the notice. All citizens are entitled to the statutory notice and the opportunity to be heard after it is given. Compare *Pitman* v. *Medford,* 312 Mass. 618,

623 (defect in notice to certain persons all of whom appeared). In the *Rousseau* case, *supra,* objection to the defective notice to an individual was made at the hearing. There is no basis for contending that the hearing by the Falmouth board of appeals cured the defect. The board of appeals had no power to exercise the judgment granted to the selectmen and did not purport to do so.

Because of this jurisdictional defect the substantive issue is not before the court. Nevertheless, as that important issue has been fully argued, we state our views thereon. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731; *Paul Livoli, Inc.* v. *Planning Bd. of Marlborough,* 347 Mass. 330, 336.

3. The appellant contends that motels are authorized in Falmouth under the provisions of the by-law next stated. "Section 2. Definitions . . . Hotel, Apartment Hotel or Lodging House: A hotel or lodging house is a building erected for and/or used for paying guests, permanently or transiently, where over five (5) bedrooms are used for such purposes. . . . Section 4. Single Residence Districts In single residence districts, subject to the provisions of Sections 14 and 15, no new building or structure and no alteration, enlargement or extension of any existing building or structure shall be designed, arranged and/or constructed, and no land, buildings, structures, or parts thereof shall be used, except for one or more of the following purposes: . . . 3. Boarding and lodging houses, hotels, apartment hotels and tea rooms subject to the provision of Section 21."

"Motel" is, of course, within the broad general meaning of "hotel."[4] The issue is whether the Falmouth by-law uses "hotel" in the broad sense of the term.

---

[4] In Webster's Third New Intl. Dictionary (1961) one of several definitions of "hotel" is "a house licensed to provide lodging and usually meals, entertainment, and various personal services for the public." The definition of "motel" reads: "[blend fr. motorists' hotel]: a hotel for automobile tourists; specif: a group of furnished cabins or attached cottages near a highway that offer accommodation to tourists." A more recent dictionary (Random House, Inc. 1966) defines "motel" as "a roadside hotel providing travelers with lodging, typically in bedrooms which are united under one roof but have individual entrances and with nearby parking space. Also called tourist court."

General usage recognizes differences between conventional hotels and most motels. This was reflected in the testimony of a selectman: "A motel is more restrictive. A hotel would have [a] large lobby, [a] desk . . . a restaurant . . . [and perhaps] other meeting rooms . . . [and generally no] direct access from the outside to rooms in a hotel." Colloquy with the judge brought out that some hotels, but not all, have fewer parking facilities than motels. The witness earlier testified that in a "residential area . . . [motels] never have a restaurant or anything like that connected with them."

For licensing purposes in Massachusetts a hotel requires an innholder's license under which it must provide both lodging and food. G. L. c. 140, § 5. *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, 290. A motel (c. 140, § 32A, as amended by St. 1965, c. 426) is "any building or group of buildings which provide sleeping accommodations for transient motorists and which is not licensed as an inn."[5]

The by-law definition of "hotel[s]" is equally the definition of lodging houses and apartment hotels, yet other provisions of the by-law[6] distinguish between these categories. Section 6, par. 3, specifies only lodging houses. Section 11 excludes hotels from a height limitation. Section 16 (e) re-

---

[5] The statute further differentiates the categories in that it does not include hotels in the group (recreational camps, overnight camps or cabins, motels or mobile home parks) which by §§ 32A–32L are subject to licensing and control in respect of water supply, sanitary conditions, and sewage disposal.

[6] Section 6 provides that in a public use district, there may be, inter alia, "3. Churches, parish houses, schools, libraries, museums, hospitals and sanitoria, educational, research and philanthropic institutions . . .; provided that dormitories, *lodging houses* [emphasis supplied], apartments . . . shall be only such as are owned or operated by a duly chartered educational or research institution." Section 11 provides that "(a) The limit of height in all residence districts shall, excepting hotels, be two and one-half stories, not to exceed thirty-five feet. (b) The limit of height for hotels shall be four stories and as provided in Section 16." Section 16 (c) allows that the required backyard behind every dwelling "may contain accessory buildings not over one and one-half stories high and covering not over thirty per cent of its area." Section 16 (e) provides that "[a] hotel, apartment hotel or apartment house containing over two and one-half stories shall have . . . a back yard of not less than one hundred feet in depth" and specified front and side yards. Section 17 (e) provides that "Hotels, as distinct from apartment houses, where permitted under this by-law, shall contain no arrangements of any description for private cooking or housekeeping."

lates to backyards for hotels, apartment hotels, and certain apartment houses but not for lodging houses. Section 17 (e) bars housekeeping facilities from hotels. The by-law thus indicates an implied qualification of the common definition, that is, for example, that a building is a hotel for purposes of the by-law only if it has the characteristics that commonly distinguish a hotel from a lodging house or an apartment hotel. See *Spicer* v.: *Claremont,* 104 N. H. 461, 463–464. The distinguishing general characteristics of a hotel are, we think, a predominance of transient guests, and a restaurant.

It appears likely that the provision in the by-law in respect of hotels and lodging houses was adopted prior to the time when there were many roadside accommodations for motorists or when the term "motel" was in use to describe them.[7] This tends to confirm the suggestion of the context of the by-law that "hotel" means the conventional hotel with restaurant accommodation. Compare *Schermer* v. *Fremar Corp.* 36 N. J. Super. 46; *Matter of Maturi* v. *Balint, Superintendent of Bldgs. of Yonkers,* 204 Misc. (N. Y.) 1011. We so construe the by-law.

We do not overlook that with the wide use of the automobile for travel there have appeared roadside facilities for transients as well equipped as are hotels, that is, with a restaurant and other services and facilities, but with parking spaces convenient to the sleeping rooms. We recognize that the proprietor may designate such a facility as a "motor hotel," or a "motel" even though it fits all the requirements of a conventional hotel. We recognize also that by our construction whether such a facility is permitted under a particular by-law may depend upon whether the restaurant is owned or operated by and licensed to the owner or operator of the sleeping facilities. That may mean drawing a fine line in some instances, but that circumstance cannot control the construction.

---

[7] The recent origin of the word is suggested by its presence only in the addenda in Webster's New Intl. Dictionary (2d ed.) published in 1959.

The ruling below that motels are not included within the authorization of hotels was based on our holding in *Costa* v. *Board of Appeals of Watertown,* 340 Mass. 380.   We there held that the by-law classification for a residence district of "lodging houses" in the phrase "[t]wo-family dwellings and lodging houses" did not imply an authorization of motels, notwithstanding the by-law definition: "Hotel or lodging house: A building designed or used for paying guests, permanently or transiently, where more than three bedrooms are used for such purposes." We expressly refrained (p. 381) from deciding whether "hotels are allowed in general residence districts although only lodging houses are specified or whether a motel may in some circumstances be deemed a hotel." We noted that hotels, motels and lodging houses are sufficiently differentiated to be differently classifiable for zoning law purposes.

Although the *Costa* case tends to support our construction of the Falmouth by-law, a distinction between the by-laws favorable to the appellant should be noted.   There the right to "lodging houses" in the residence district was absolute.   Here the requirement of a permit, which may be granted subject to conditions to protect the community and may be refused if "substantial injury" would result, empowers the selectmen to allow for the differences in the effects of the particular accommodation proposed for tourists in the particular location specified.   Thus all zoning law purposes related to the distinction in the categories would be appropriately served notwithstanding a grouping of motels with hotels.   But that is not the issue; rather it is, has the Falmouth by-law included motels in the single classification of "hotels"?

We have examined the decisions elsewhere.   Some reported cases exclude "motel" from the category "hotel." *Matter of Von der Heide* v. *Zoning Bd. of Appeals of Somers, Westchester County,* 204 Misc. (N. Y.) 746.   *Longo Liquor License Case,* 183 Pa. Super. Ct. 504.   See also *Hotel Syracuse, Inc.* v. *Motel Syracuse, Inc.* 283 App. Div. (N. Y.) 182, affd. 309 N. Y. 831 (unfair competition case);

*Thruway Motel of Ardsley, Inc.* v. *Hellman Motel Corp.*
11 Misc. 2d (N. Y.) 418 (trade mark case); *People* v. *Reilly,*
20 Misc. 2d (N. Y.) 139 ("motel" not a "hotel" for pur-
poses of room occupancy tax). Other cases support the
view that the category "hotel" includes "motel" in the ab-
sence of other indication in the by-law. *Schermer* v. *Fre-
mar Corp.* 36 N. J. Super. 46. *Matter of Maturi* v. *Balint,
Superintendent of Bldgs. of Yonkers,* 204 Misc. (N. Y.)
1011. *Purdy* v. *Moise,* 223 S. C. 298 ("motor court" or
"tourist court"). See *Long* v. *Norton,* 327 Mich. 627
("multiple dwelling" includes "motel"). Our holding
construing the word "hotel" in the context in which it is
used does not, we think, contravene the principle underlying
these cases.

The by-law, of course, lacks precision, but its present
form and its evolution point to an amendment as the way to
authorize motels if that is the town's will.

4. The decree below is affirmed because of absence of
jurisdiction in the selectmen.

*So ordered.*