FRANK GALLAGHER & others *vs.* BOARD OF SELECTMEN OF FALMOUTH & another.[1]

Barnstable. March 10, 1967. — April 3, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ

*Zoning*, Motel, Hotel. *Words*, "Motel," "Hotel."

Where it appeared in a suit in equity that the day after the entry in a previous suit in equity of a decision of the Superior Court that the zoning by-law of a town authorizing its selectmen to grant a special permit for a hotel had not authorized them to grant a permit for a motel the applicant therefor filed an application with the selectmen for a "hotel," using a copy of the same foundation and plot plan that had been used for the motel application except that the letter "M" in the title was changed to "H," that the essential differences between the proposed buildings were that the doors of the "hotel" rooms would open on an interior corridor rather than directly to the outside of the building, the space available for the rooms of the "hotel" would be less because of the corridor, and it would have a lobby with an attendant and a

———————

[1] The other defendant is the applicant for the hotel permit.

Gallagher *v.* Board of Selectmen of Falmouth.

tennis "pro" shop and lockers, that the applicant had "not applied for any dining room," and that he repeatedly called the proposed "hotel" a motel, it was held that the second application related to a motel and that the selectmen's grant of a permit therefor was invalid.

BILL IN EQUITY filed in the Superior Court on April 12, 1965.

The suit was heard by *Gourdin, J.*

*Walter H. McLaughlin, Jr.*, for the plaintiffs.

*John H. Fletcher Calver* for the defendants.

WHITTEMORE, J. This is an appeal to the Superior Court under G. L. c. 40A, § 21, from the decision of the board of selectmen of Falmouth pursuant to § 21 of the zoning by-law granting a special permit for a hotel. The judge in the Superior Court ruled that the board of selectmen had not exceeded its authority and that no modification of the decision was required. The case is here by appeal from the ensuing final decree.

On January 27, 1965, in another appeal under c. 40A, § 21, the Superior Court had ruled that the action of the selectmen authorizing a permit for a motel on the same premises was invalid. This court in *Gallagher v. Board of Appeals of Falmouth,* 351 Mass. 410, 412–415, sustained the final decree in that case on jurisdictional grounds. We stated our view, however, that the by-law did not authorize a motel.

The day after the January 27, 1965, decision was entered in the Superior Court, the same applicant filed the application for a hotel, using a copy of the same foundation and plot plan that had been used in the prior proceedings except that the letter "M" in the title was changed to "H."

Before the board and in the Superior Court the treasurer of the applicant showed two sketch elevations, which he himself had prepared, one for the motel as it would have been and the other for the hotel as it would be according to his thinking at that time. The essential difference was that the doors of the rooms in the "hotel" would open on an interior corridor rather than directly to the outside of the building. The floor space being the same, the space avail-

Gallagher *v.* Board of Selectmen of Falmouth.

able for the thirty-six rooms, each with bath, would be reduced in the "hotel" by the area of the corridor. In describing the building the applicant testified in the Superior Court that there would be a lobby in which there would be a man on duty at all times to prevent rowdyism. In the lobby would be a tennis "pro" shop and lockers for the use of the tennis players. When asked if there would be a dining room he answered, "We have not applied for any dining room."

The appellees contend that all the requirements of § 21 of the by-law had been met; that is, the application was for a permit for a hotel, due notice was given and due hearing held, and the selectmen considered the effect of the proposed hotel on the neighborhood and the town. The board's decision and the evidence in the Superior Court supported the conclusion that the "permit . . . would not result in substantial injury."

The appellants contend only that the application was not for a hotel, but for a motel. We agree. The proposed building was essentially the structure called a "motel" by all concerned in the prior case and ruled by this court to be such.[2] The appellees urge that the interior corridor is the determinative feature, and that we should alter our construction of the by-law. We are not disposed to do so. The word "hotel" in the application and in the board's decision is, in the present circumstances, not controlling. The appellees urge that some buildings may be so unlike

---

[2] In the prior case (351 Mass. 410, 417) we said, "The by-law . . . indicates . . . that a building is a hotel for purposes of the by-law only if it has the characteristics that commonly distinguish a hotel from a lodging house or an apartment hotel. . . . The distinguishing general characteristics of a hotel are, we think, a predominance of transient guests, and a restaurant. . . . We do not overlook that with the wide use of the automobile for travel there have appeared roadside facilities for transients as well equipped as are hotels, that is, with a restaurant and other services and facilities, but with parking spaces convenient to the sleeping rooms. We recognize that the proprietor may designate such a facility as a 'motor hotel,' or a 'motel' even though it fits all the requirements of a conventional hotel. We recognize also that by our construction whether such a facility is permitted under a particular by-law may depend upon whether the restaurant is owned or operated by and licensed to the owner or operator of the sleeping facilities. That may mean drawing a fine line in some instances, but that circumstance cannot control the construction."

motels and so like hotels in design and general accommodations as to be appropriately classed with hotels even though they lack dining rooms. We need not explore the contention. What is proposed is not such a structure.

The lobby, with attendant, appears on the evidence to be the kind of office that every motel requires, with the addition only of accommodations to serve the tennis courts required by the terms of the board's grant of the permit.[3]

We think it not without significance that the applicant, when testifying in the Superior Court, repeatedly called the building a motel.[4] This, to be sure, was after a reference to the approval by the State Department of Public Health of a plan showing "sewage disposal system for a 40 unit motel." Nevertheless the applicant's characterization tends to show what this building was intended to be notwithstanding a change to avoid the effect of an adverse court decision.

---

[3] "[S]ubject to certain conditions, namely, that the tennis courts be retained and operated for the public use so as to be available for sport and recreation; that the hotel and grounds conform to all the building code and all the sanitary and health laws and by-laws of the Town and of the State and that adequate off-street parking of automobiles be provided for the tennis court patrons as well as the patrons of the hotel and that the vacant or open grounds be landscaped and kept at all times in good condition."

[4] Q. "I ask you to describe for his Honor the type of terrain that this plot consists of?" A. "May I use the plan here?" Q. "Sure. Use anything you want." A. "The actual tennis courts themselves are located in this particular area. As I say it is not drawn to scale. But the tennis courts run in this way. The motel itself will run back into a slightly elevated area and go across the back at a right angle. The land itself where the tennis courts are [is] level, they are overlooking the bay that comes in there. The land itself and where this motel is going is overlooking that bay on a clear view with nothing in between where the motel or the tennis courts are with relation to the water. . . ." Q. "Now, what about behind this proposed hotel? What is the building behind it? The existing building? Are there any houses behind it there?" A. "On this particular side there is a home that was just sold recently to a Mrs. Babbit. The motel in no way, shape or form blocks her view. In the rear of this motel on this extension here from the center lobby area there are two homes that back up against the area where the motel would be. One of the — may I go on?" Q. "Yes." A. "One of the homes has a shed or two and also a fence that is taller than I am and I am six foot two inches, completely blocking any view from a bedroom that exists there. So regardless of whether this is in the view is blocked. The second house has evergreens in the backyard which are approximately five to six foot tall which completely block one small bedroom. There is no other home that will have anything blocked whatsoever. The location of this motel, hotel, was put in with that view in mind. That no one in the area would be hurt."

We rule that the application and the board's decision related to a motel. The grant of the permit is invalid. The final decree is reversed. A decree is to enter in the Superior Court to the effect that the decision of the board exceeded its authority and is annulled.

*So ordered.*