WILLIAM P. QUINN & others[1] vs. ZONING BOARD OF APPEALS
OF DALTON & others[2]
(and two companion cases[3]).

Berkshire.   April 24, 1984. — May 31, 1984.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Housing. Statute*, Construction. *Zoning*, Board of appeals: notice of hearing,
hearing.

A vote passed by a town meeting pursuant to G. L. c. 121B, § 39, approving
a proposal by the town's housing authority to construct additional housing
for elderly persons was not required to include language designating the
site of the proposed project. [194-196]
On appeal from action of a town's board of appeals granting a comprehensive
permit to the local housing authority for construction of housing for
elderly persons, there was no merit to the plaintiff abutters' claim that,
when the proceeding was remanded to the board of appeals in order to
afford a hearing to certain municipal boards, the abutters should have
been allowed to submit additional comments on the authority's applica-
tion, where the judge's warranted findings indicated that the plaintiffs
had had sufficient opportunity to express their views at the initial hearing
and where the record gave no indication of any specific additional criti-
cism which the plaintiffs had been prevented from making at the second
hearing. [196-198]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on October 23, 1981, December 18, 1981, and March
29, 1983, respectively.
The cases were heard by *Simons*, J.

---

[1] Additional plaintiffs are eight other abutters of the proposed housing
project which is the subject of the controversy.

[2] The individual members of the zoning board and the Dalton Housing
Authority.

[3] The companion cases were brought by the same plaintiffs against the
zoning board and the housing authority and their respective members.

*Jerry E. Benezra (W. Stanley Cooke* with him) for the plaintiffs.

*Mitchell W. Boraski* for the defendants.

*Francis X. Bellotti,* Attorney General, *& John P. Graceffa,* Assistant Attorney General, for Executive Office of Communities and Development, amicus curiae, submitted a brief.

GREANEY, C.J. By their actions, the plaintiffs challenge a comprehensive permit granted pursuant to G. L. c. 40B, § 21, by the Dalton zoning board of appeals (board) to the Dalton Housing Authority (authority) for the construction of an elderly housing project in the town. Two questions are presented by the appeal: (1) whether the vote taken by the Dalton town meeting pursuant to G. L. c. 121B, § 39, approving the authority's proposal to construct additional elderly housing, was invalid in the absence of a designation of the site of the proposed project; and (2) whether the board was required, on remand from the Superior Court for further proceedings, to receive additional comments by the plaintiffs on the authority's application for a comprehensive permit. We answer both questions in the negative.

Under an article in the warrant for its annual town meeting held on May 1, 1978, the voters of the town passed a vote permitting the authority to enter into a contract with the Commonwealth's Department of Community Affairs (DCA) for the construction of a new elderly housing project.[4] In keeping with the vote, the authority filed an application with the DCA and took action to acquire land, to secure financing, and to contract for the project. On February 10, 1981, the authority and DCA executed financial assistance agreements for construction of the project and the authority was advanced $50,000. On May 26, 1981, the authority and the DCA approved and executed an option to purchase a specific construction site. On August

---

[4] The town meeting vote which was passed read as follows: "It was moved, seconded and voted that the Town approve the Dalton Housing Authority's entering into a contract or contracts with the Department of Community Affairs for state financial assistance in the form of a grant by the Commonwealth for the construction of a new project for the housing of elderly persons as the same may from time to time be necessary."

21, 1981, the authority applied to the board, pursuant to G. L. c. 40B, § 21, for a comprehensive permit for the project.[5] The board informed all the local boards which had an interest in the project (see note 12, *infra*), as well as any abutters who were entitled by law to notice, of a September 17, 1981, public hearing on the application for the permit.[6] After the public hearing, the board granted the comprehensive permit.

The plaintiffs, who are abutters to the proposed project, filed complaints in the Superior Court (1) on October 23, 1981, seeking judicial review of the board's actions, and (2) on December 18, 1981, seeking a declaration that the authority had acted improperly because the town meeting vote did not specify the location of the project. Both of these cases were consolidated for trial before a judge of the Superior Court sitting without a jury.

On the first complaint, the judge determined that the board had failed to comply with all the requirements for notice to local boards imposed by G. L. c. 40B, § 21.[7] He annulled the board's grant of the comprehensive permit but allowed the defendants twenty days in which to move for an order remanding the case to the board to cure the defects. The defendants so moved, and the judge subsequently entered an order directing the board "[t]o hold a public hearing for the limited purpose of receiving recommendations from local town boards with

---

[5] General Laws c. 40B, § 21, as amended by St. 1975, c. 808, §§ 4, 4A and 4B, authorizes a developer of low or moderate income housing to file a single application with the local zoning board of appeals to obtain all necessary approvals, in the form of a comprehensive permit, for the development of the project. The statute provides for notice to all local boards which are concerned with the project and the opportunity for representatives of those boards to be heard before the board of appeals.

[6] No question has been raised by the plaintiffs concerning the validity of the notices sent to the abutters.

[7] The judge found that the board had not forwarded complete copies of the authority's application for the comprehensive permit to the various local boards concerned with the project and had not requested that a representative of each such board appear at the public hearing held by the board on the application, all as required by the second and third sentences of G. L. c. 40B, § 21.

respect to the comprehensive permit filed by the [authority] with [the board] on August 21, 1981." After the parties stipulated compliance with the remand order, and after the board reaffirmed the grant of the comprehensive permit, the judge affirmed the actions of the board in all respects and entered judgment for the defendants. The plaintiffs appealed.

In the declaratory judgment action, the judge ruled that the plaintiffs lacked standing and ordered the action dismissed. Against the possibility that his ruling on standing should be found erroneous by an appellate court, the judge ruled that the town meeting vote was proper because G. L. c. 121B, § 39, does not require selection of the project's site prior to the town meeting's authorizing vote. The plaintiffs appealed from the judgment dismissing their action.[8]

1. *Disclosure of the site in the initial authorizing vote.* The pertinent language of G. L. c. 121B, § 39, is set forth in the margin with critical words italicized.[9] The language of the stat-

---

[8] The plaintiffs then filed a third complaint on March 29, 1983, seeking review of the order of remand and the board's final decision. The defendants moved to dismiss on the grounds that this third action concerned the same parties and issues as were involved in the earlier actions. The judge granted the motion to dismiss. The judge then permitted the plaintiffs to consolidate their appeal from the judgment in this third action with the pending appeals from the judgments in the two prior actions.

We can eliminate at this juncture further discussion of procedural complications arising out of the plaintiffs' appeal. Suffice it to say that the judge clearly had the authority to remand the matter to the zoning board for further proceedings, see *Roberts-Haverhill Associates* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 718-719 (1974), and that the plaintiffs have adequately saved for review, by their timely appeals from the judgments entered in the first two actions, all the issues discussed in this opinion. See *Rollins Environmental Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 178 (1975).

[9] The second paragraph of G. L. c. 121B, § 39, inserted by St. 1969, c. 751, § 1, provides as follows: "In any town in which a veterans' housing project or project for the housing of elderly persons has already been constructed or established, the local housing authority shall not be empowered to erect *a new housing project for elderly persons* nor shall a contract for financial assistance applicable to the construction of *a new project for the housing of elderly persons* be entered into . . . until there shall have been submitted to, and approved by vote of, an annual town meeting or a special town meeting called therefor, the question whether the local housing authority should be empowered to erect *such new housing project,* for one of the

ute is straightforward and unambiguous. Hence, we must construe it in accordance with that plain language, keeping in mind the statute's purpose and the objectives which it seeks to accomplish. *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). See also *James J. Welch & Co.* v. *Deputy Commr. of Capital Planning & Operations*, 387 Mass. 662, 666 (1982); *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.*, 15 Mass. App. Ct. 553, 561-562 (1983).

There is nothing in the statutory language which indicates that the question posed to the town meeting must designate a proposed site. Instead, that question need only address whether the local housing authority should be empowered to construct additional housing for the elderly in the town. Gleaning a site requirement from the language used by the Legislature would stretch the words of the statute well beyond any apparent or necessary implication contained therein. The conclusion that the statute does not require designation of a site is further confirmed by the phrase "such new housing project" used in the fifth clause of the second paragraph of the statute, which refers to the two related phrases used in its second clause — "a new housing project for elderly persons" and "a new project for the housing of elderly persons." By using the indefinite article "a" instead of the definite article "the" in the latter phrases, the Legislature indicated that the central issue in the town vote is the general proposal concerning the construction of more housing for the elderly within the town, not the specific details of any project later undertaken pursuant to the approval of the general proposal. Supplying a "the" for an "a", as the plaintiffs' argument essentially urges, would amount to impermissible judicial redrafting of the statute. See *Boylston Water Dist.* v. *Tahanto Reg. Sch. Dist.*, 353 Mass. 81, 83-84 (1967);

---

purposes authorized by law, *as said authority should thereafter determine to be reasonably necessary and feasible*" (emphasis supplied).

*Beeler* v. *Downey*, 387 Mass. 609, 617 (1982).[10] We conclude that the town's vote was proper.[11]

2. *Limited hearing on remand.* The judge was not required to order that the plaintiffs be allowed to participate in the hearing upon remand. Prior to entering the remand order, the judge found that, aside from the failure to comply with the notice provisions (for local boards) of G. L. c. 40B, § 21, the board followed all applicable statutory procedures. In addition, the judge found that the board's decision to grant a comprehensive permit was not contrary to law and was based upon sufficient evidence, and that the decision was further supported by the need for the housing project, by appropriate consideration of the health and safety of the town's residents and future occupants of the project, and by due regard for the effect on local surroundings.

The judge's findings also indicate that, despite the board's failure to follow fully the notice provisions of G. L. c. 40B, § 21, local boards[12] which had an interest in the project and their

[10] We note that our construction of the statute establishes a rational sequence of decision making. First, the town meeting decides "the question whether the local housing authority should be empowered to erect such new housing project." Once this decision is made in the affirmative, the authority is left to decide what housing will be "reasonably necessary and feasible." An aspect of that determination involves the selection and purchase of a particular site. We also note that our construction avoids putting the authority in the undesirable position of locating and bargaining for a site before receiving authorization to construct on that site (a situation which may work to the authority's financial disadvantage), and tends to further the expressed policy of the Legislature to facilitate the construction of needed housing for the elderly. See G. L. c. 121B, § 38.

[11] The determination that no requirement is imposed by G. L. c. 121B, § 39, that the proposal include a specific site renders it unnecessary to explore the issue of standing. The standing issue is a difficult one, the resolution of which might in any event depend on a determination of the requirements of § 39 regarding selection of a site.

[12] The application filed by the authority listed the following eight separate town boards, commissions or officers of the town who may have had an interest in the application for a comprehensive permit: (1) board of selectmen; (2) planning board, (3) board of health, (4) building inspector, (5) police department, (6) fire department, (7) conservation commission, and (8) water department. These eight boards, commissions, or officers are collectively referred to as the local boards and were found by the judge to be covered by the notice provisions of G. L. c. 40B, § 21.

individual members[13] had been informed of the authority's application for a permit. Each local board had received notice "advising that a hearing would be held on September 17, 1981, giving the time and place, and, stating that an application was made by the [authority] for a hearing so as to permit a comprehensive permit under General Laws, Chapter 40B, Section 21, the premises described as being located at High Street in Dalton." Attached to this notice was a detailed description of the authority's several requests for variances from the zoning by-laws. A copy of the permit application was provided to the town clerk prior to the initial public hearing and was posted in the town clerk's office.[14]

On September 16, 1981, the planning board considered the authority's applications and plans at a formal meeting. Prior to the board's September 17, 1981, public hearing, the authority's architect met with, and solicited recommendations from, the planning board, the boards of selectmen and health, the building inspector, the superintendent of streets and sewers, and the police and fire department. At that public hearing, members of the planning board, the conservation commission, and the boards of selectmen and health were present and presumably were afforded an opportunity to be heard.

The plaintiffs were furnished an opportunity to present their views at the initial September 17, 1981, public hearing and have not claimed that they did not receive adequate notice or that they did not have a chance to prepare their opposition to the application. Cf. *Rousseau* v. *Building Insp. of Framingham*, 349 Mass. 31, 37 (1965); *Gallagher* v. *Board of Appeals of Falmouth*, 351 Mass. 410, 414 (1966). The judge found that the plaintiffs' opposition to the project centered on concerns that its elderly occupants would be disadvantaged by the fact

---

[13] The judge also found that the town had many individuals who held more than one government position. The following examples were indicated: the town clerk was also the town treasurer; the secretary to the board was also the secretary to the planning board; and the town selectmen constituted the board of health. One busy individual was a member of the board of selectmen, the board of health, the park commission, and the sewer commission and was also tree warden and road superintendent.

[14] All the town's municipal offices are located in one building.

that the proposed building would have two stories which would require stair climbing and that some low income tenants would occupy the project along with elderly tenants.

The plaintiffs argue that being excluded from active participation in the hearing upon remand prevented them from commenting publicly upon matters raised for the first time by the local boards. Singularly absent from the record, by way of affidavit or otherwise, is any indication of what these comments might have involved. Also absent is any basis for questioning the judge's finding that the board gave appropriate consideration, before the permit was granted, to the health and safety of the town's residents and the future occupants of the project. In light of circumstances indicating: (1) that the local boards and their members received substantial information about the application prior to the initial September 17, 1981, public hearing; (2) that several members of the different local boards attended the hearing; (3) that the plaintiffs had an opportunity to express their views fully at that public hearing; (4) that the plaintiffs' concerns appear restricted to the height of the structure and the expected mix of tenants; and (5) that no specific criticism has been directed to the recommendations made by the local boards, we conclude that the judge committed no legal error in failing to require that the remand hearing be open to the plaintiffs or in declining to order the board so to open the hearing. See *Selectmen of Kingston* v. *Board of Appeals of Kingston*, 3 Mass. App. Ct. 704 (1975); *Deibel* v. *Yorke*, 4 Mass. App. Ct. 770 (1976). See also *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 119 (1981).

The judgments in civil actions nos. 30506 and 31173 are affirmed. The judgment in civil action no. 30586 is vacated[15] and a new judgment is to be entered declaring (1) that the May 1, 1978, vote of the Dalton town meeting is valid because G. L. c. 121B, § 39, does not require that the vote required

---

[15] Here we remind the trial court of the requirement that "when an action for declaratory relief is properly brought, even if relief is denied on the merits, there must be a declaration of rights of the parties." *Boston* v. *Massachusetts Bay Transp. Authy.*, 373 Mass. 819, 829 (1977).

therein designate a project site, and (2) that the actions taken by the authority in reliance on the May 1, 1978, town meeting vote were duly authorized. The defendants are to have costs of appeal.

*So ordered.*