Gants, J.
The plaintiff, Metro Park Corporation (“Metro Park”), and the defendants, James and Maureen Mongeau (“the Mongeaus”), through cross motions for summary judgment, ask this Court to declare the validity or invalidity of the Order of Conditions issued on July 14, 2000 by the Marlborough Conservation Commission (“the Commission”) concerning a parcel of land owned by Metro Park off Fitchburg Street in Marlborough (“the Property”). After hearing and for the reasons stated below, Metro Park’s motion for summary judgment is ALLOWED IN PART AND DENIED IN PART, as is the Mongeaus’ motion for partial summary judgment.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Here, where all parties move for summary judgment, this Court will present only those facts that are not in dispute.
On February 6, 1998, James Mongeau’s father, Eugene, and Metro Park entered into a Restated Purchase and Sale Agreement whereby Metro Park purchased the Property from Eugene for $828,500. Prior to the sale of this roughly 18.8 acres of land, Eugene sold his son, James, a parcel of land adjacent to the Property. James and his wife in 1999 built a house on this adjacent parcel, where they presently reside.
Development of the Property was governed by the Massachusetts Wetland Protection Act (“the Act”), G.L.c. 131, §40. Under the Act, Metro Park was required to file a Notice of Intent of its plans to develop the Property with the Commission, and could not proceed with any development that had a significant environmental impact except in accordance with an *483 Order of Conditions obtained from the Commission after a public hearing. G.L.c. 131, §40. In accordance with the Act, Metro Park filed a Notice of Intent with the Commission on May 15, 2000.
The Act imposes precise requirements regarding the provision of notice to abutters:
Any person filing a notice of intention with a conservation commission shall at the same time give written notification thereof, by delivery in hand or certified mail, return receipt requested, to all abutters within one hundred feet of the property line of the land where the activity is proposed, at the mailing addresses shown on the most recent applicable tax list of the assessors . . .
G.L.c. 131, §40. The Mongeaus, although abutters to the Property, did not receive legal or actual notice of the Notice of Intent or of the public hearing. The reason for this omission was that the Commission routinely prepared a mailing list of the abutters as a convenience to those applying for an Order of Conditions under the Act. The agent that Metro Park retained for this purpose relied on the mailing list received from the Commission, which failed to include the Mongeaus. That mailing list unfortunately had been compiled by the Commission from the Tax Assessors Map, not “the most recent applicable tax list of the assessors,” and the Map for some reason had not been updated to include the Mongeaus’ acquisition of the parcel adjacent to the Property.[1] Consequently, while notice was provided to those on the mailing list, no notice was provided to the Mongeaus, and they did not know of either the Notice of Intent or the public hearing that was held on July 6, 2000.
At the hearing, the Commission approved an Order of Conditions for the Property, which was issued on July 14, 2000. On June 1, 2001, in accordance with the Order of Conditions, Metro Park began to clear trees on its Property. James Mongeau observed the trees being cleared and called the Commission, asking about the status of the adjacent Property. During this telephone call, he learned for the first time of the existence of the Order of Conditions, and asked the Commission for a copy, which was provided to him at some time before August 7, 2001. On August 7, 2001, the Mongeaus’ attorney wrote a letter to Metro Park and the Commission complaining of the absence of notice and contending that, in the absence of such notice, the Order of Conditions is null and void. The Mongeaus, through their attorney, demanded in this letter that Metro Park cease and desist from all further development of the Property until a new Notice of Intent was filed and a new Order of Conditions was issued following a public hearing. The Mongeaus’ attorney declared in this letter that, if development did not cease, the Mongeaus would be forced to file suit for damages and injunctive relief to enjoin such development.
Development ceased for a period of time but no resolution was reached between Metro Park and the Mongeaus. The Mongeaus continued to threaten litigation but did not commence litigation or otherwise appeal the Commission’s grant of the Order of Conditions. On March 13, 2002, Metro Park filed the instant action seeking a declaration from this Court that the Mongeaus, by failing to appeal the Commission’s grant of the Order of Conditions to the Massachusetts Department of Environmental Protection (“DEP”) orbring suit in Superior Court challenging the Order of Conditions, have essentially waived any right they may have to challenge the Order of Conditions. The Mongeaus then filed a counterclaim seeking a declaration from this Court that the Order of Conditions is null and void because of Metro Park’s failure to provide them with notice of the public hearing, and seeking damages on its claims of trespass and nuisance.
DISCUSSION
Under G.L.c. 131, §40, an owner of abutting land may appeal the Commission’s grant of an Order of Conditions to the DEP provided the appeal is sent to the DEP by certified mail or hand delivered within ten business days of the issuance of the Order, with copies sent by certified mail or hand delivered to the applicant and the Commission. G.L.c. 131, §40; 310 CMR 10.05(7)(c). Once the appeal is received by the DEP, the DEP must make the determination requested and issue a written order within seventy days. Id. The DEP’s Order “shall supersede” the Commission’s prior Order of Conditions, which is why the DEP’s Order is referred to as a Superseding Order of Conditions. See id. 310 CMR 10.05(7). Within ten business days of the issuance of the Superseding Order of Conditions, an owner of abutting land may request an adjudicatory hearing before the DEP, appealing the Superseding Order of Conditions. 310 CMR 10.05(7). No development of the property may commence in accordance with an Order of Conditions or Superseding Order of Conditions until all administrative appeal periods have elapsed, or all proceedings before the DEP have been completed. Id. Consequently, no work may be done on the properly until at least ten days after the issuance of the Order of Conditions, and no work may commence if the abutter appeals to the DEP within the ten-day appeal period. Even after a Superseding Order of Conditions is issued, the developer must wait ten days to commence work, and must continue to wait if the abutter requests an adjudicatoiy hearing within that ten-day appeal period. The work on the property may begin only after a decision is rendered following the adjudicatory hearing affirming (or modifying) the Superseding Order of Conditions. Once the abutter exhausts his administrative appeals, he may file an action in Superior Court to restrain a violation of G.L.c. 131, §40, and the court may “enter such orders as it deems necessary to remedy such violation,” *484 including a preliminary injunction staying development of the properly. G.L.c. 131, §40.
This case poses an equitable dilemma. There is no doubt that the Mongeaus were denied their statutory right to notice of the Commission’s public hearing regarding Metro Park’s application for an Order of Conditions and that, had they filed an appeal with the DEP within ten business days of their learning of the existence of the Order of Conditions in the summer of 2001 and properly exhausted their administrative remedies, this Court would have remanded the matter to the Commission to conduct a new hearing with proper notice if the DEP had not already done so. The Mongeaus, however, did not appeal the Order of Conditions to the DEP; nor did they promptly bring any action in Superior Court. They threatened legal action to declare the Order of Conditions null and void, but they did not actually bring such legal action until August 22, 2002, when they filed their counterclaim to Metro Park’s complaint for declaratory judgment. Their delay has prejudiced Metro Park, who has invested roughly $2 million dollars in the development of the Property and who now, more than one year after the Mongeaus learned of the Order of Conditions, are litigating whether the Order of Conditions on which it relied in commencing work on the Property is null and void and whether all work on the Property must cease until the Commission (and, in the event of an appeal, the DEP) issue a new final Order.
The Mongeaus contend that it would have been futile to bring an appeal to the DEP, because both G.L.c. 131, §40 and 310 CMR 10.05(7)(c) permit such an appeal only if it is filed within ten business days of the issuance of the Order of Conditions, and their appeal, even if promptly filed, would have been filed roughly a year after its issuance. The Mongeaus correctly observe that DEP has interpreted the ten-day deadline as a jurisdictional requirement, concluding that DEP has no jurisdiction over appeals filed more than ten business days after issuance of the Order of Conditions. Matter of Cross Point Limited Partnership, 3 DEPR 82, 84 (1996). The Mongeaus also correctly observe that neither the applicable statute nor the DEP regulations provide for an exception to the ten-day deadline when the abutter is denied the required statutory notice and only learns of the existence of the Order more than ten business days after its issuance. The Mongeaus, however, are not correct in concluding that an appeal filed within ten business days of their learning of the existence of the Order of Conditions would have been futile. This Court finds that the DEP would likely have concluded that it had jurisdiction over the Mongeaus’ appeal even if it were filed more than ten business days after issuance of the Order of Conditions because the Mongeaus had neither actual nor statutory notice of the public hearing on the Notice of Intent or of the existence of the Order of Conditions. See Matter of Cross Point Limited Partnership, Decision on Motion for Reconsideration, 3, DEPR 161, 162 (1996); Matter of Bay Park Development Trust, Final Decision, 7 MELR 1255 (1989).
While both Metro Park and the Mongeaus erred— Metro Park for failing to ensure that proper notice was given to the Mongeaus and the Mongeaus for failing to appeal the Order of Conditions to the DEP within ten days of learning of the Order — neither are truly blameworthy for having done so. Metro Park must bear responsibility for failing to give proper notice of the public hearing on the Notice of Intent to the Mongeaus, but its agent understandably (albeit mistakenly) relied on the abutter list furnished by the Commission. The Mongeaus must bear responsibility for failing timely to appeal the Order of Conditions to the DEP, but its attorney understandably (albeit mistakenly) believed that the DEP would declare any such appeal untimely and refuse to take jurisdiction over it.
The attorneys have not cited (and this Court has not found) any cases that address this or similar situations with respect to the grant of an Order of Conditions under G.L.c. 131, §40, but there are analogous cases involving the grant of zoning variances by local Zoning Boards of Appeal (“ZBA”) that are instructive. In the older zoning cases, Massachusetts appellate courts strictly applied the notice requirements imposed by statute and held that the failure to fulfill these notice requirements rendered the ZBA’s decision null and void. See Planning of Peabody v. Board of Appeals of Peabody, 358 Mass. 81 (1970) (ZBA’s action found invalid when ZBA illegally delegated giving of notice to applicant’s attorney); Rousseau v. Board of Appeals of Framingham, 349 Mass. 31 (1965) (issuance of permit to build gas station found invalid where notice to affected property holders was not reasonable and did not give them opportunity to prepare opposition); Gallagher v. Board of Appeals of Falmouth, 351 Mass. 410 (1966) (action by selectmen was invalid where notice was made only by publication and not by mail, as required by statute). The finding of invalidity appeared to rest on the legal conclusion that the grant of notice required under the statute was a prerequisite to the ZBA’s authority to issue a decision, so the absence of proper notice meant that the ZBA lacked the jurisdiction to act. See Gallagher v. Board of Appeals of Falmouth, 351 Mass. at 415 (lack of required notice was “jurisdictional defect”); Lane v. Selectmen of Great Barrington, 352 Mass. 523, 526 (1967) (notice is “jurisdictional requirement”).
In the more recent cases, the Appeals Court has refused to view the statutory notice as a jurisdictional requirement, since that would mean that any failure of statutory notice, even in the presence of actual notice, would require the invalidation of the ZBA decision, regardless of when the issue was raised. Kasper v. Board of Appeals of Watertown, 3 Mass.App.Ct. 251, 256-57 (1975) (noting that, if notice were jurisdictional, every recipient of variance “would remain indefinitely subject to attack in proceedings in *485 the nature of mandamus”); Chiuccariello v. Building Commissioner of Boston, 29 Mass.App.Ct. 482 (1990) (adopting reasoning of Kasper). Instead, the Appeals Court has concluded that the abutting properly owner must show that he was prejudiced by the failure to give statutory notice if he wishes to challenge the ZBA decision on that ground. Kasper v. Board of Appeals of Watertown, 3 Mass.App.Ct. at 257; Chiuccariello v. Building Commissioner of Boston, 29 Mass.App.Ct. at 486. Prejudice is generally shown by establishing that the abutter lacked actual or timely notice of the hearing, so that he was denied a fair opportunity to oppose the application seeking the variance at the hearing. Kasper v. Board Of Appeals of Watertown, 3 Mass.App.Ct. at 257.
While G.L.c. 40A, §17 requires that an appeal of a final ZBA decision be filed in court within twenty days after the decision has been filed in the office of the city or town clerk, courts have reached the merits of cases challenging the adequacy of notice even when they were filed after the twenty-day deadline. See, e.g., Lane v. Selectmen of Great Barrington, 352 Mass. at 526; Kasper v. Board of Appeals of Watertown, 3 Mass.App.Ct. at 256; Chiuccariello v. Building Commissioner of Boston, 29 Mass.App.Ct. at 487. Courts have dismissed the appeal brought under G.L.c. 40A, §17 because of the untimeliness of its filing, but have considered relief in the nature of mandamus under G.L.c. 249, §5. See, e.g., Lane v. Selectmen of Great Barrington, 352 Mass. at 526; Kasper v. Board of Appeals of Watertown, 3 Mass.App.Ct. at 256 & n.9; Chiuccariello v. Building Commissioner of Boston, 29 Mass.App.Ct. at 487.
Applying these principles to the case at bar, this Court adopts the view that this Court may award relief in the nature of mandamus even if the more traditional appeal under G.L.c. 131, §40 were barred by the Mongeaus’ failure to exhaust administrative remedies through the DEP. This Court also adopts the more recent view of the Massachusetts appellate courts that defects in statutory notice do not deprive the Commission of jurisdiction to issue an Order of Conditions, so the absence of notice to the Mongeaus does not automatically render the Order null and void. Rather, the Order may be rendered invalid only upon a showing of prejudice. The Mongeaus have persuasively demonstrated prejudice in that they had no actual notice of the hearing before the Commission and therefore had no opportunity to oppose Metro Park’s application for an Order of Conditions.
While these findings favor the Mongeaus’ position, they do not necessarily lead to summary judgment in their favor because this Court could find, under the doctrine of laches, that they should be denied judicial review of the Order of Conditions because of their delay in seeking judicial review. See Chiuccariello v. Building Commissioner of Boston, 29 Mass.App.Ct. at 487-88. In Chiuccariello, the Appeals Court upheld the trial court’s finding that laches barred the abutters’ appeal because the abutters waited six months after learning that the developers had obtained building permits and began construction in reliance on the variance before filing suit. Id. Here, the Mongeaus waited more than a year before filing their counterclaim seeking judicial nullification of the Order of Conditions. In Chiuccariello, the court found laches even when, as here, the abutters “protested and threatened legal action but did not take any.” Id.
This Court could certainly find, as the court did in Chiuccariello, that the Mongeaus’ delay in bringing legal action barred them from judicial relief, but this Court does not believe that such a bar would be equitable here. In Chiuccariello, the abutters not only waited six months after construction had begun to bring their lawsuit, but did not seek injunctive relief to prevent further construction on the property. Id. at 485. Consequently, when the Superior Court judge ruled on the validity of the variance, construction of the 105 condominium units had been completed, certificates of occupancy had been issued, and 93 units had been sold to bona fide purchasers who were not parties to the action. Id. Here, while Metro Park has invested roughly $2 million dollars in developing this property in reliance on the Order of Conditions, development is still at a relatively early stage and it is not clear from the record how much of that $2 million, if any, was spent after the Mongeaus learned of the Order of Conditions and threatened suit. In short, the Mongeaus’ delay in filing suit has placed at risk a significant percentage of Metro Park’s investment in its development of this property but not, as in Chiuccariello, the entirety of that investment. Equity requires that this Court take this additional risk into account, but the additional risk is not so great as to bar all judicial relief.
In an attempt to balance these equities and obtain the fairest possible result under the circumstances, this Court shall pursue an unorthodox course. This Court finds that the Mongeaus were actually prejudiced by their lack of notice of the Commission hearing only if the outcome of the hearing would have been different had their voices been heard. Therefore, to determine whether the lack of notice resulted in actual prejudice to the Mongeaus, this Court hereby remands this matter to the Commission for a further public hearing, to be held at the earliest practicable date, with proper notice to all abutters (including, of course, the Mongeaus), to reconsider its issuance of the Order of Conditions. The Order of Conditions shall remain in effect until the Commission rules on the matter of reconsideration, as shall the preliminary injunction issued by this Court. If the Commission, after hearing, decides to leave the original Order of Conditions unchanged, there shall be no administrative appeal to the DEP because the deadline for the Mongeaus to have administratively challenged the original Order of *486 Conditions has long passed and no new Order of Conditions will have been issued. If the Commission pursues this path, it will essentially have simply denied the Mongeaus’ request for reconsideration. If the Commission revokes its Order of Conditions or materially modifies it, then it shall be treated as a new Order of Conditions, and may be administratively appealed to the DEP. If the Commission pursues this path, it will essentially have granted the Mongeaus’ request for reconsideration and issued a new Order. Either way, the reconsideration by the Commission shall permit this litigation to be resolved with the Mongeaus having the opportunity to be heard, with the Commission deciding substantive issues on the merits after hearing from the Mongeaus, and with Metro Park permitted to continue with development of the property pending the Commission’s decision, albeit at its own risk.
ORDER
For the reasons stated above, Metro Park’s motion for summary judgment and the Mongeau’s motion for partial summary judgment is ALLOWED IN PART AND DENIED IN PART in that this Court hereby ORDERS that:
1. This Court hereby remands this matter to the Commission for a further hearing, to be held at the earliest practicable- date, with proper notice to all abutters (including, of course, the Mongeaus), to reconsider its issuance of the Order of Conditions.
2. The Order of Conditions shall remain in effect until the Commission rules on the matter of reconsideration, as shall the preliminary injunction issued by this Court.
3. If the Commission, after hearing, decides to leave the original Order of Condition unchanged, there shall be no administrative appeal to the DEP because the deadline for the Mongeaus to have administratively-challenged the original Order of Conditions has long passed and no new Order of Conditions will have been issued. If the Commission revokes its Order of Conditions or materially modifies it, then it shall be treated as a new Order of Conditions, and may be administratively appealed to the DEP.
4. This Court shall retain jurisdiction of this matter, and expressly reserves decision as to the validity or invalidity of the Order of Conditions issued on July 14, 2000 by the Commission until the Commission completes its reconsideration of that Order.

There is a dispute of fact as to whether the Marlborough Tax Assessor had compiled a “tax list,” but there is no dispute that the Tax Assessor possessed information in its office regarding the ownership by the Mongeaus of the adjacent parcel of land.